COURT OF APPEALS OF VIRGINIA


Present: Judge Willis, Senior Judges Hodges and Overton
Argued by teleconference


SANTO LANGLEY

MEMORANDUM OPINION* BY
v.   Record No. 0772-99-1        JUDGE WILLIAM H. HODGES
                                  DECEMBER 28, 2000
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Edward W. Hanson, Jr., Judge

William P. Robinson, Jr. (Robinson &
Anderson, on brief), for appellant.

Eugene Murphy, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.


Santo Langley (appellant) appeals from a judgment of the Circuit Court of the City of Virginia Beach convicting him of first degree murder, conspiracy, and burglary. He contends the trial court erred by 1) refusing to sever his trial from that of his codefendants; and 2) admitting his codefendants' out-of-court statements into evidence against him. For the reasons that follow, we reverse appellant's convictions.

## Background

During the course of their investigation into the July 25, 1997 burglary of Tara Harper's residence and the murder of William McKleny, police interrogated appellant, Terrence Woolard, Toney

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Griffin, Jerry Norman and Armard Smith.  All five were ultimately charged with conspiracy, burglary, first degree murder, and related firearm offenses.  Over appellant's objection, the court permitted trial of appellant and his codefendants jointly and admitted into evidence the statements of appellant's codefendants.

At trial, Detective Orr testified that he interviewed appellant at 6:05 p.m. on July 25.  He recalled that appellant initially denied knowledge of the crimes but later admitted "he . . . took part in the conversation . . . between him and the four other codefendants . . . . about breaking in the home" and had agreed to knock on the door and act as a lookout.  Appellant claimed that, after banging on the door with a stick several times, he returned to Woolard's car and heard a gunshot.

Appellant testified that in the early morning hours of July 25, he was a passenger in Woolard's car, following Griffin, Norman and Smith in Norman's car.  Parking in the Northridge section of Virginia Beach, Griffin, Norman and Smith exited Norman's car and walked down the street.  Woolard and appellant followed the others, and Woolard stopped near Harper's townhouse and walked to the rear.  As appellant returned toward the car, he again encountered Woolard, and the two ran to the car after hearing a gunshot.  Norman, Griffin and Smith joined them a short time later, and Woolard drove appellant to his home.  Appellant denied knowledge of the offenses.  He explained that, when Detective Orr advised him that a codefendant had told police

-

appellant knocked on the door, he had merely replied, "Okay," noting that Orr did "all the talking."

During Orr's trial testimony, the court admitted into evidence Woolard's videotaped statement to police. Woolard then had stated that, after arriving at Northridge, he overheard someone mention a man who lived "up the street" and kept a lot of money in his house. Walking behind Norman, Griffin and Smith, Woolard became aware that one of the three had a gun. Woolard also told the police that appellant knocked on or rang the bell at the front door of Harper's residence. When Woolard testified, however, he recanted that portion of his statement implicating appellant, explaining that, when police mentioned to him that one among the group had knocked on Harper's door or rung the doorbell, he falsely named appellant because he was scared.

In recalling events at trial, Woolard testified that, accompanied by appellant, he had driven to Northridge around 1:00 a.m. on July 25, following Norman, Griffin and Smith. After Woolard parked, Norman, Griffin and Smith exited and walked away. A short time later, Woolard and appellant followed, and Woolard walked through a "cut," finding Smith in Harper's backyard. Noticing Harper's back door ajar, Woolard stepped inside, but concluded something was not right and returned to his car. En route, Woolard was joined by appellant. Before reaching the car, Woolard and appellant heard a gunshot, turned and observed Smith and Norman running toward them from the direction of Harper's

-

residence and Griffin running from another direction. All five men entered Woolard's car, and he drove to a nearby shopping plaza, where the passengers exited and Woolard proceeded home.

The trial court also admitted into evidence videotaped statements made to the police by codefendants Griffin, Smith and Norman. Griffin admitted shooting the victim but did not implicate appellant in his statements.

Smith initially denied involvement but later admitted to Orr that he and appellant had gone to Harper's door and rung the doorbell. Within minutes, however, Smith retracted this statement and stated he and three men had walked to the rear of Harper's residence and pried open the rear door, while appellant remained at the front. Smith told Orr that appellant and Griffin knew a drug dealer, "Big Mike," resided in the house, and appellant suggested they go to "Big Mike['s] crib." Smith did not testify at trial.

In his statement to police, Norman recalled that Smith had mentioned "Big Mike" as a "big time drug dealer." Norman initially said he stood in the backyard with appellant and Woolard while Griffin and Smith pried open the back door and entered Harper's residence. According to Norman, he left with Woolard and appellant after Griffin and Smith said there was a little girl inside the house. Moments later, however, Norman admitted he did not leave the backyard and was in the house when Griffin shot the

-

victim.  He also said that everyone knew he and Griffin were armed.  Norman did not testify at trial.

The jury convicted all the defendants of conspiracy, burglary, and first degree murder.  Griffin and Norman were also convicted of using a firearm in the commission of a felony.

## Analysis

"In all criminal prosecutions, state as well as federal, the accused has a right, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, 'to be confronted with the witnesses against him.'"  Lilly v. Virginia, 527 U.S. 116, 123 (1999).  "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact."  Maryland v. Craig, 497 U.S. 836, 845 (1990).  Thus, the admission of a non-testifying codefendant's custodial confession violates a defendant's rights under the Confrontation Clause, unless the prosecution can otherwise establish the inherent reliability of the confession.  Lilly, 527 U.S. at 137-38.

Thus, to be admissible, a non-testifying codefendant's confession

> must be "supported by a 'showing of
> particularized guarantees of
> trustworthiness.'"  The particularized
> guarantees of trustworthiness necessary to
> rebut the presumption of unreliability must
> "be drawn from the totality of circumstances
> that surround the making of the statement

-

and that render the declarant particularly worthy of belief."  Evidence admitted based upon the existence of particularized guarantees of trustworthiness must be so trustworthy that adversarial testing would add little to its reliability.

Bass v. Commonwealth, 31 Va. App. 373, 383-84, 523 S.E.2d 534, 539 (2000) (citations omitted).  Factors that a court may consider in determining such reliability include 1) the accomplice's unawareness of the fact that he has been implicated in a crime by a codefendant; 2) the police's ignorance of the confessor's involvement in the crime confessed; and 3) "the exercise of any contemporaneous cross-examination by counsel or its equivalent." Id. at 384, 523 S.E.2d at 539.

Moreover, a codefendant's confession will be deemed reliable and therefore, admissible, if it is substantially identical to the defendant's confession, that is, if the two confessions interlock. See id. at 384-85, 523 S.E.2d at 540.  However,

"[i]f those portions of the codefendant's purportedly 'interlocking' statement which bear to any significant degree on the defendant's participation in the crime are not thoroughly substantiated by the defendant's own confession, the admission of the statement poses too serious a threat to the accuracy of the verdict to be countenanced by the Sixth Amendment.  In other words, when the discrepancies between the statements are not insignificant, the codefendant's confession may not be admitted."  Conversely, an accomplice's statement that does not "interlock" with the defendant's statement may be admitted against the defendant if the areas of disagreement are irrelevant or trivial.

-

Id. at 385, 523 S.E.2d at 540 (quoting Lee v. Illinois, 476 U.S. 530, 545 (1986)).

Here, Woolard testified and was subject to cross-examination. Therefore, any attendant Confrontation Clause error was remedied. However, neither Smith, Norman, nor Griffin testified. At the time Smith and Norman confessed, each was in custody, aware they were going to be charged with the burglary and McKleny's murder. None of the non-testifying codefendants was subjected to "contemporaneous cross-examination." Therefore, the circumstances surrounding their respective confessions did not weigh in favor of reliability. Further, no codefendants' incriminating confession interlocked with appellant's statement or trial testimony.

The Commonwealth, therefore, failed to establish the inherent reliability of the Norman, Smith, and Griffin statements, and the trial court erroneously admitted those statements into evidence. The error was not harmless.

> The standard that guides our analysis of the harmless error issue in this case is clear. Thus, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt;" otherwise the conviction under review must be set aside. This standard requires a determination of "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." In making that determination, the reviewing court is to consider a host of factors, including the importance of the tainted evidence in the prosecution's case, whether that evidence was cumulative, the presence or absence of evidence corroborating or contradicting the

-

> tainted evidence on material points, and the
> overall strength of the prosecution's case.

Lilly v. Commonwealth, 258 Va. 548, 551, 523 S.E.2d 208, 209
(1999) (citations omitted).

The record discloses no physical evidence of appellant's
involvement in the offenses. Both appellant and Woolard testified
and recanted those portions of their respective statements that
incriminated appellant. Thus, the confessions of Norman and Smith
constituted the only direct evidence that established appellant's
involvement in the offenses. We cannot conclude that admitting
those confessions into evidence was harmless beyond a reasonable
doubt.

Accordingly, the judgment of the trial court is reversed, and
the case is remanded for retrial if the Commonwealth be so
advised.[1]

Reversed and remanded.

---

[1] In consideration of our decision, we expressly decline to
address the remaining assignments of error.

-